# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* KOEHLER/MILES, Minors.

UNPUBLISHED
December 8, 2016

No.  332364
Livingston Circuit Court
Family Division
LC No.  2015-014960-NA

Before:  Jansen, P.J., and Cavanagh and Boonstra, JJ.

PER CURIAM.

Respondent appeals by right an order terminating her parental rights to her minor children under MCL 712A.19b(3)(c)(i), (g) and (j).  Respondent challenges the trial court's findings that statutory grounds existed to terminate her parental rights and that termination was in the children's best interests.  Respondent also claims that petitioner failed to make reasonable reunification efforts and improperly denied her parenting time.  We affirm.

## I.  PERTINENT FACTS AND PROCEDURAL HISTORY

Respondent is the mother of five minor children.[1]  The children were first removed from respondent's care in December 2012 after St. Clair County Child Protective Services (CPS) found that she had two people living in her home who had warrants out for their arrest.  Heroin paraphernalia and drug needles were found in the home in an area accessible to the children.  Respondent was being evicted from the home.  Respondent was later convicted of retail fraud and incarcerated.  The children were placed with their maternal grandparents.  The conditions that led to the removal included respondent's substance abuse, inadequate housing, unemployment, and inadequate parenting skills.  Respondent was provided with 14 months of family reunification services that included Families First, weekly life skills, random drug screens, a substance abuse assessment, a psychological evaluation, 24 weeks of outpatient therapy, NA and AA meetings, parenting time and case management.  Although respondent's psychological evaluation recommended that the children not be returned to respondent for at least two years, the children were transitioned back to her care between December 2013 and

---

[1] The father of four of the children relinquished his parental rights during these proceedings.  The parental rights of the father of the remaining child were terminated in 2008.  Neither father is a party to this appeal.

April 2014. The case was closed and respondent relocated to Livingston County. Respondent admitted that she remained with her boyfriend and used heroin again with him in 2014, and that she did not reach out for sobriety support.

In less than a year, on March 26, 2015, the children were again removed from respondent's care. Respondent was incarcerated on March 23, 2015 after being arrested on a warrant for home invasion and five counts of forgery. Livingston County CPS substantiated a complaint that the children, then ages 3 to 10, had been left home alone, preparing meals for themselves that at times consisted solely of soda pop from the local gas station. One child was observed at a bus stop wearing just a shirt and a diaper. Respondent's boyfriend had allegedly physically abused one of the children. Respondent pleaded to the allegations in the petition and the children were placed in non-relative foster care. She remained incarcerated until December 28, 2015 when she was released into a 90-day inpatient drug rehabilitation program in the Upper Peninsula.

In May 2015, the trial court ordered respondent to comply with and benefit from a treatment plan. Reunification services were limited because respondent was in jail. Respondent completed all services that were available to her, which included moral recognition therapy, anger management, parenting, Moving Forward, weekly coping skills, weekly opiate classes and AA meetings until they were no longer offered. Respondent was psychologically evaluated in August 2015 and had a second substance abuse assessment in October 2015. Family reunification and adoption were concurrent planning goals until the November 20, 2015 permanency planning hearing, when the court ordered petitioner to file a supplemental petition to terminate respondent's parental rights. A termination petition was filed on December 19, 2015. Respondent's parental rights were terminated in February 2016 pursuant to MCL 712A19b(3)(c)(i), (g) and (j). The trial court stated:

> From [respondent's] testimony, it is clear that she does not entirely recognize her parental difficulties and appears to believe that her children were always appropriately cared for while she was engaging in substance abuse and neglecting them. . . . In minimizing her long-term and substantial difficulties, she cites only some minimal lack of emotional involvement caused by her substance abuse and criminality, which would need to be rectified. This, coupled with her demonstrated resistance to CPS and other attempts to provide treatment, does not bode well for her ability to benefit from services in the future. Although [respondent] has engaged in services in years past through her prior foster-care case in St. Clair County and her multiple probation supervisions, and appeared to make progress for periods of time, it is apparent to this Court that she has not maintained sufficient benefit from the services or internalized changes necessary to provide these children with proper care and custody within a reasonable time.

This appeal followed.

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court clearly erred by finding a statutory basis for terminating her parental rights under MCL 712A19b(3)(c)(i), (g) and (j). We disagree. This

Court reviews orders terminating parental rights for clear error. *In re Rood*, 483 Mich 73, 90-91, 126 n 1; 763 NW2d 587 (2009); MCR 3.977(K). To be clearly erroneous, a decision must be more than maybe or probably wrong. *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009). Clear error exists "if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

Before terminating a respondent's parental rights, the trial court must make a finding that at least one of the statutory grounds under MCL 712A.19b(3) has been established by clear and convincing evidence. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). MCL 712A19b(3)(c)(i), (g) and (j) provide for termination of parental rights if:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . .
>
> (i) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> \* \* \*
>
> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> \* \* \*
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

It was uncontroverted that respondent had significant and longstanding addictions to various substances. Respondent testified that she had used drugs on and off for most of the children's lives. At age 23, she consistently used crystal meth for one year while caring for her first child. Respondent began using heroin regularly in April 2011. Respondent also had a lengthy criminal history beginning in her late teens through 2015. Her criminal record includes numerous convictions for larceny, retail fraud, uttering and publishing, and forgery. Her crimes mostly involved theft or falsifying personal and payroll checks to obtain money to buy drugs.

Respondent also has a history of inappropriate relationships. In 2002, respondent began a relationship with CK, the father of four of her children, whom respondent knew had a criminal record and also used illicit drugs. CK was in and out of jail or prison during much of his adult life. Respondent would resume her relationship with CK after his releases from prison. They had a physically abusive relationship. Respondent testified that they had "a couple incidences," including one in which he pushed her "down some stairs backwards," and another in which she was hospitalized after he punched her in the face, resulting in broken eye blood vessels, and bit a "chunk" of skin on her arm. In April 2007, they were in an altercation during which he attempted to swerve respondent's car into oncoming traffic while her two young children were in

the back seat. As a result, he was returned to prison for two years on a parole violation. When he was released, respondent resumed her relationship with him, and three more children were subsequently born.

In June 2011, CK was arrested on drug charges and spent 45 days in jail. Shortly after his release, respondent's family came to the attention of CPS when respondent allegedly attempted to hide CK in the family home after he had robbed a bank. Respondent admitted to using heroin with CK while the children were in their care before the police arrived to arrest him.

After completing a 30-day inpatient rehabilitation program in September 2012, respondent began a relationship with her new boyfriend, who was also a heroin addict. Respondent allowed him to move into her home with the children knowing that he had a significant criminal record, including a domestic violence conviction. They used heroin together in late November 2012. Respondent believed that she could use it "just once" and did not reach out to sobriety support after this relapse.

The conditions that led to the May 2015 adjudication were criminality, substance abuse, improper supervision, physical neglect, unstable housing and financial instability. At least some of these conditions continued to exist for more than 182 days. Moreover, although respondent had completed some services while incarcerated, had been released from jail to a rehabilitation program, and professed to have gained parental insight, her testimony showed that she minimized the impact her heroin addiction and criminal lifestyle had on her children. It is not enough for a respondent to merely complete required services; a respondent must benefit from them. See *In re Gazella*, 264 Mich App 668, 677; 692 NW2d 708 (2005), superseded by statute in part on other grounds in MCL 712.A19b(5) (finding no error in termination of the respondent's parental rights when respondent "did not sufficiently benefit from the services offered to enable the court to find that she could provide a home for her children in which they would no longer be at risk of harm"). Here, the record shows that respondent failed to benefit from services provided. Further, respondent testified that she had adequate parenting skills and was unwilling to take instruction from service providers. Respondent was unrealistic in her proposed plans to be reunited with the children after her release from her second inpatient rehabilitation program. Respondent's 2015 psychological evaluation revealed that she had a personality disorder in addition to several substance abuse disorders and that her treatment prognosis was poor. A foster care worker with experience in community mental health testified that treatment for personality disorders would involve up to a year of intensive therapy.

In sum, the evidence clearly and convincingly supported the trial court's conclusion that additional services would not rectify the conditions that had led to the children's second removal within a reasonable time given the children's young ages, satisfying MCL 712A.19b(3)(c)(i).

These proofs similarly showed that respondent failed to provide proper care or custody and would not be able to do so within a reasonable time, MCL 712A.19b(3)(g). Moreover, these proofs established a reasonable likelihood that the children would be harmed if returned to respondent's care, MCL 712A.19b(3)(j). Respondent had a pattern of failing to succeed with a multitude of different treatments. She had consistently failed to abstain from using drugs and from engaging in inappropriate relationships that put her children at risk. She exhibited a lack of

insight into the problematic nature of her behavior and its effects on the children. In fact, she testified that she was willing to co-parent with CK, a person who had repeatedly placed the children at great risk of harm with his substance abuse and criminality. The trial court did not err by finding these grounds for termination supported by clear and convincing evidence.

Relatedly, respondent's argument that termination was based solely on her incarceration and was improper under *In re Mason*, 486 Mich 142; 782 NW2d 747 (2010), is without support. The court's decision was not based primarily on respondent's incarceration. The court properly considered the entire span of respondent's interactions with CPS, including her substance abuse history, heroin relapses after inpatient and outpatient treatment, and continued criminal activity. Moreover, the respondent in *Mason*, unlike respondent, was providing for his family before his incarceration, and respondent, unlike *Mason*, was provided with services before and during her incarceration. Also, respondent was physically present at all proceedings, except two at which she was present via telephone. In addition, although not ultimately fruitful, petitioner in this case, unlike in *Mason*, explored the avenues of relative placement. Thus, this case does not run afoul of the Supreme Court's holding in *Mason*.

## III. REUNIFICATION EFFORTS/PARENTING TIME

In addition to arguing that the trial court erred by finding that statutory grounds for termination had been met, respondent also argues that petitioner failed to make reasonable reunification efforts, and erred by denying her parenting time once termination was sought. We disagree.

Petitioner is required to make reasonable efforts to reunify a family before terminating parental rights unless aggravated circumstances are present. MCL 712A.19a(2); MCL 722.638. Respondent claims that petitioner failed to give respondent adequate time and services to remove family reunification barriers, and that termination was premature because it was sought within eight months, as opposed to two years, after the children's removal in March 2015. We disagree. As noted, petitioner provided extensive services to respondent, over an extended period of time. Respondent incorrectly argues that the court had to wait two years pursuant to MCL 712A.19b(3)(h) (parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding two years). However, the fact of respondent's incarceration does not require that petitioner seek termination only under subsection (h). Termination in this case was sought under MCL 712A.19b(3)(c)(i), (g) and (j), not MCL 712A.19b(3)(h). As discussed above, the record supports the statutory grounds for termination found by the trial court, and the two-year incarceration requirement of MCL 712A.19b(3)(h) is irrelevant to the grounds actually found by the trial court.

Moreover, respondent's contention that it was unreasonable for the court to consider services that were provided before the 2015 adjudication is meritless. It is well established that child protective proceedings are a single continuous action. *In re LaFlure*, 48 Mich App 377, 391; 210 NW2d 482 (1973). Thus, the trial court properly considered all services that had been provided to respondent since 2012. The trial court was not precluded from assessing respondent's failure to benefit from services provided to her in St Clair County.

Respondent also argues that she was improperly denied parenting time and that this interfered with her ability to reunify with her children. However, respondent agreed with the court throughout this case that it was inappropriate to have parenting time with the young children while she was in jail. Moreover, she agreed that, as the children had expressed that they did not want to see her, it would be inappropriate to have them make a 10-hour round trip to visit her in the rehabilitation facility. Her attorney expressly noted that she had never requested that the children be transported to Sault Ste. Marie for parenting time. Therefore, this issue is waived. See *People v Hershey*, 303 Mich App 330, 349; 844 NW2d 127 (2013) (affirmative approval results in waiver of an issue, foreclosing appellate review).[2]

## IV. BEST-INTEREST DETERMINATION

Respondent also asserts that terminating her parental rights was not in the children's best interests. We disagree. Once a statutory ground is established, the court must determine, by a preponderance of the evidence, whether it is in the child's best interests to terminate a respondent's parental rights. MCL 712A.19b(5); MCR 3.977(E)(3)(b). *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013). A best interests finding must be supported by a preponderance of the evidence. *Id*. A trial court may consider evidence on the whole record in making its best-interest determination. *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000), superseded by statute on other grounds as stated in *In re Moss*, 301 Mich App at 83. The trial court may consider various factors, in addition to the child's bond to the parent, *In re BZ*, 264 Mich App at 301, including the parent's parenting ability, *In re Jones*, 286 Mich App 126, 129-130; 777 NW2d 728 (2009), and the child's need for permanency, stability and finality, *In re Gillespie*, 197 Mich App 440, 446-447; 496 NW2d 309 (1992). See also *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 35 (2012).

The record shows that respondent's declared love and affection for the children did not outweigh other factors demonstrating that terminating her parental rights was in the children's best interests. The trial court properly concluded that respondent had been unable or unwilling to provide the children with a safe, stable and permanent environment for several years because of her long history of substance abuse and criminality, as well as continued involvement with men who had drug addiction and domestic violence issues. The children lived in an ever-changing home environment riddled with drugs and crime. They bounced between living with respondent and CK while he was in and out of incarceration, with grandparents, with respondent and her

---

[2] We note also that once a termination of parental rights petition is filed, the court may suspend parenting time pursuant to MCL 712A.19b(4) and MCR 3.977(D). The suspension of parenting time once a petition to terminate parental rights is filed is within the trial court's discretion and "requires no finding of harm [by the court] and is presumptively in the child's best interest[.]" *In re Laster*, 303 Mich App 485, 489, 491; 845 NW2d 540 (2013). Even were we to find that respondent had not waived this issue, we would find that respondent has not demonstrated that the trial court's decision to suspend parenting time rather than require that the children make a 10-hour round trip to visit with her while she was in a rehabilitation facility, and when the children had reported that they did not wish to see her, was an abuse of discretion.

boyfriend, and in non-relative foster care. Respondent was also incarcerated multiple times, limiting her ability to form a bond with her children.

The record also indicates that there would be a significant delay before respondent could even possibly reunite with her children. The foster care worker opined that respondent would need six months to one year of *intensive* therapy after her release from inpatient rehabilitation. Additionally, respondent would have to address housing for five children, transportation, employment and domestic violence issues. Respondent minimized the difficulty in removing these parental barriers, testifying that she would be able to meet all of the children's physical and emotional needs within two to six months.

Further, the trial court gave appropriate weight to respondent's psychological evaluations. It was reported that respondent may appear friendly and helpful but would likely have self-serving motives, that "[r]egardless of the situation, when emotionally overwhelmed or stressed or faced with a frustrating situation, [respondent] is likely to react impulsively and not consider how her reactions impact herself or others," that respondent appeared to have difficulty following through on her promises, and that "her tendency to externalize blame and deny her part in situations is not likely to change easily even over time as this tendency is likely part of her personality and not just situational." It was further reported that individuals with respondent's profile assume little responsibility for their problems, that their acting-out behavior is likely to be destructive to treatment planning, and that the profile type "may appear to be cooperative and to enjoy therapy for a time, but they usually resist any demands to alter their behavior because they are not very introspective and see little reason to change, and may behave inappropriately aggressive, antagonistic and abusive towards others." Given respondent's personality disorder, coupled with her substance abuse history, it was unlikely that she would be able to care for the children within a reasonable time.

Finally, the evidence clearly showed that the children needed safety, stability and permanency. They had lived in a revolving situation of neglect, abuse and exposure to drug use and the 9 and 10 year olds had assumed parental roles for the younger children. All of the children had bonded with the foster parents and foster siblings. None of them expressed a desire to be with respondent. The oldest child's disorders and anxiety abated within months of being in his foster care placement and the two oldest were thriving in school. As stated in *In re Dahms*, 187 Mich App 644, 647; 468 NW2d 315 (1991), "children should not have to wait indefinitely for parental reformation and rehabilitation which does not occur within a reasonable time, or may never come to fruition."

Affirmed.


/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra

-7-