*In re* GILLESPIE

Docket No. 145184. Submitted November 5, 1992, at Grand Rapids. Decided December 8, 1992, at 9:55 ᴀ.ᴍ.

The Department of Social Services petitioned the Kent Probate Court, Juvenile Division, seeking termination of the parental rights of Manuel Gillen and Barbara Gillespie with regard to a minor child who had been made a ward of the court because Gillespie abandoned him and Gillen, the alleged father, was in prison. The petition listed Gillen as the father of the child, and he received notice of hearing by ordinary mail that did not include a copy of the petition. He did not appear at the original hearing, but was represented by counsel at two subsequent hearings and appeared personally at the termination hearing, but did not testify or present witnesses. Following the hearings, the court, Janet A. Haynes, J., entered an order terminating Gillen's parental rights. He appealed, alleging that the court never acquired personal jurisdiction over him.

The Court of Appeals *held:*

1. MCL 712A.12; MSA 27.3178(598.12) provides that a noncustodial parent must be served personally with a summons and notice of the petition to terminate parental rights and the time and place of a dispositional hearing or a contested termination hearing.

2. Gillen was not a noncustodial parent for purposes of the statutory notice requirement because he never established paternity of the child in a legally recognized manner. Because Gillen was not the legally recognized father of the child at the time of the filing of the petition and the subsequent hearings, he was not entitled to the same service and notice afforded a noncustodial natural parent and was not actually a respondent within the meaning of MCR 5.903(C)(7).

3. The general rules governing waiver of objections regarding service of process apply in termination proceedings, such as this, where an alleged parent appears at the termination

REFERENCES

Am Jur 2d, Bastards § 62.

What amounts to recognition within statutes affecting the status or rights of illegitimates, 33 ALR2d 705.

hearing, challenges the petition for termination, and fails to challenge or raise the issue of lack of service of process arising out of the prior proceedings.

Affirmed.

PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — NONCUS-TODIAL PARENTS — NOTICE — PATERNITY.

A putative father of a child who has not established paternity in a legally recognized manner is not a noncustodial parent entitled to statutory service of process regarding a proceeding to terminate parental rights (MCL 712A.12; MSA 27.3178[598.12]).

*William A. Forsyth,* Prosecuting Attorney, *Timothy K. McMorrow,* Chief Appellate Attorney, and *Gregory T. Boer,* Assistant Prosecuting Attorney, for the Department of Social Services.

*Michael L. Idema,* for Manuel Gillen.

Before: HOOD, P.J., and SAWYER and JANSEN, JJ.

PER CURIAM. Manuel Gillen (hereafter respondent) appeals as of right from a probate court order terminating his parental rights on the grounds of abandonment, MCL 712A.19b(3)(a)(ii), MSA 27.3178 (598.19b)(3)(a)(ii), and failure or inability to provide proper care, MCL 712A.19b(3)(g); MSA 27.3178(598.19b)(3)(g). Barbara Gillespie, the child's mother, has not appealed the termination of her rights. We affirm.

The child, who was born addicted to cocaine, was initially made a ward of the court on August 24, 1990, because his mother abandoned him with a friend without making adequate provisions for his care. The mother had a history of prostitution and drug abuse. Respondent was in prison.

Respondent claims that the probate court never acquired personal jurisdiction over him because he was never personally served with a summons or with a copy of the initial petition. He was served with a notice of hearing dated September 10, 1990,

by ordinary mail that, petitioner admits, did not include a copy of the petition. At the initial dispositional hearing held on October 3, 1990, the probate court accepted the mother's plea of admission, heard testimony, and exercised jurisdiction over the child. Respondent was released from jail in January 1991.

After two review hearings at which respondent was represented by appointed counsel, a termination petition was filed. Respondent was served by publication because, although he had been released from prison, his whereabouts were unknown. On the day of the hearing, his sister appeared and indicated that he was back in jail.

The hearing was adjourned to allow him to appear through a writ of habeas corpus. He did appear, but did not testify or present any witnesses. At the conclusion of the hearing, the court determined that he was the child's biological father and terminated his parental rights on the basis of his failure to visit, failure to provide support, and inability or failure to provide proper care. This appeal followed.

Respondent does not allege that the court did not acquire jurisdiction over the subject matter, the child, but rather, that the court failed to acquire personal jurisdiction over him, as required by MCL 712A.12; MSA 27.3178(598.12). This Court has interpreted the statutory language as requiring that a noncustodial parent be personally served with a summons and notice of the petition and the time and place of a dispositional hearing or a contested termination hearing. See *In re Adair,* 191 Mich App 710, 713; 478 NW2d 667 (1991). Failure to provide such personal notice constitutes a jurisdictional defect that renders all proceedings in the probate court void. *In re Adair, supra.* However, a parent may waive notice of

hearing or service of process by voluntarily appearing before the court and signing a written waiver. MCL 712A.12; MSA 27.3178(598.12); *In re Parshall,* 159 Mich App 683, 691; 406 NW2d 913 (1987). Further, alternative means of service are authorized by MCL 712A.13; MSA 27.3178(598.13).

In this case, the initial petition, authorized on August 24, 1990, listed respondent as the father of the child. The record also contains a notice of hearing dated September 10, 1990, which indicates that respondent received by "ordinary mail" notice of the time and place of the initial contested adjudication or disposition hearing. Additionally, the notice informed respondent of his right to counsel. However, the record does not reflect that a summons was issued for respondent. Instead, the record contains only a summons that was issued for Barbara Gillespie and Bobby Gillen, the father of the child's half sister. Further, the record does not indicate that the notice of the initial hearing was personally served on respondent or served on respondent in an alternative manner authorized by MCL 712A.13; MSA 27.3178(598.13). Finally, the record contains no written waiver signed by respondent.

At first blush, it would appear that the probate court lacked jurisdiction over respondent because it failed to personally serve him with the requisite documentation and thus that the probate proceedings are void. However, these conclusions are valid only if it can be said that respondent was a noncustodial parent entitled to notice. Petitioner argues that respondent was not a noncustodial parent for purposes of the statutory notice requirements because he failed to establish paternity in a legally recognized manner. We agree, under the circumstances of this case.

As previously observed, a noncustodial parent is

entitled to be personally served with notice of the petition and the time and place of the hearing and with a summons. Neither the Probate Code nor case law defines the terms "parent" or "father" for purposes of satisfying the personal-service requirement. However, a panel of this Court, in *In re Montgomery,* 185 Mich App 341, 342-343; 460 NW2d 610 (1990), when reviewing a probate court's decision that a male respondent lacked standing to participate in proceedings to terminate parental rights, did look for guidance to the definitions of parent and father set forth in the Michigan Court Rules.

MCR 5.903(A)(12) defines parent as "a person who is legally responsible for the control and care of the minor, including a . . . father." Further, MCR 5.903(A)(4) defines father as follows:

> (a) a man married to the mother at any time from the minor's conception to the minor's birth unless the minor is determined to be a child born out of wedlock;
> (b) a man who legally adopts the minor; or
> (c) a man whose paternity is established in one of the following ways within time limits, when applicable, set by the court pursuant to this subchapter:
> (i) the man and the mother of the minor acknowledge that he is the minor's father in a writing executed and acknowledged by them in the same manner provided by law for the execution and acknowledgment of deeds of property and filed in the probate court in the county in which the man, mother, or minor resides;
> (ii) the man and the mother file a joint written request for a correction of the certificate of birth pertaining to the minor that results in issuance of a substituted certificate recording the birth;
> (iii) the man acknowledges the minor, without the acknowledgment of the mother, with the ap-

proval of the court as provided in MCR 5.921(D)(2) (b); or

(iv) A man who by order of filiation or by judgment of paternity is determined judicially to be the father of the minor.

MCR 5.921(D) provides in pertinent part:

(2) After notice to the putative father as provided in subrule (D)(1), the court may conduct a hearing to determine that:

\*   \*   \*

(b) a preponderance of the evidence establishes that the putative father is the natural father of the minor and justice requires that he be allowed 14 days to establish his relationship according to MCR 5.903(A)(4); provided that if the court decides the interests of justice so require, it shall not be necessary for the mother of the minor to join in an acknowledgment. The court may extend the time for good cause shown.

In this case, although Barbara Gillespie informed the probate court at the October 1990 adjudication or disposition hearing that respondent was the child's father and that respondent had "signed papers" to this effect, no proof that respondent actually established paternity was ever presented. Further, the record indicates that respondent never established paternity in any of the manners set forth in MCR 5.903(A)(4), or in any other manner in that regard. In fact, the probate court twice ordered respondent to establish paternity, but respondent never complied with the court's orders. Finally, the probate court did determine respondent to be the natural father of the child at the close of the termination hearing, but that finding was made without explanation.

Given that respondent was not the legally recog-

nized father of the child at the time of the filing of the petition and the October 1990 hearing regarding the petition, we do not believe that respondent was entitled to the same service and notice as afforded a noncustodial natural parent. Because respondent had not legally established the he was the father of the child, he was not actually a "respondent" within the meaning of MCR 5.903(C)(7). (See MCR 5.921, which prescribes extensive measures to be taken to assure that a putative father has an opportunity to assert his rights if he so chooses.) Respondent did receive the benefit of the Probate Code's purpose of informing all interested parties of the substance of the proceedings. See *In re Paulson,* 212 Mich 502, 506; 180 NW 386 (1920).

In addition, we note that although respondent did not appear before the court during the initial hearing, he did appear before the court for the termination hearing. At that time, he did not raise any objection to the court's jurisdiction over him and specifically declined to testify. It would appear that this failure to challenge the court's exercise of personal jurisdiction at the termination hearing was not fatal to respondent's ability to launch this collateral attack. However, given that a probate court is to consider all hearings, from the initial adjudication or disposition hearing to the termination hearing, as a single continuous proceeding, *In re LaFlure,* 48 Mich App 377, 391; 210 NW2d 482 (1973), given that respondent does not challenge the notice he received with regard to the review hearings or the termination hearing, given that respondent appeared at the termination hearing without claiming a lack of personal service, given the disruption collateral attacks of the nature of the attack raised in this case cause to the placement process, and given a child's need for perma-

nency, stability, and finality, we believe that the general rules governing waiver of objections regarding service of process should apply in termination proceedings where a parent or parents appear at the termination hearing, challenge the petition for termination, and fail to challenge or raise the issue of lack of service of process arising out of prior proceedings.

Affirmed.