*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. A. DAVIDSON, Minor.

UNPUBLISHED
August 8, 2019

No. 346153
Oakland Circuit Court
Family Division
LC No. 2016-845230-NA

Before: K. F. KELLY, P.J., and TUKEL and REDFORD, JJ.

PER CURIAM.

Respondent-mother, V. Morgan, appeals as of right the trial court's order terminating her parental rights to the minor child pursuant to MCL 712A.19b(3)(b)(*i*), (g), and (j). Because there are no errors warranting relief, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On the evening of May 8, 2016, respondent's adult daughter, TM, noticed respondent exhibiting bizarre behavior. Respondent appeared "disoriented" and "out of it." TM suspected that respondent was using heroin again because her behavior was similar to past behaviors when she was under the influence of drugs. The following morning, TM learned that the child had missed her school bus and that respondent had taken TM's car without permission. While attempting to chase the school bus down the road, respondent was involved in a one-car accident that resulted in severe and life-threatening injuries to both herself and the child. After a lengthy hospitalization, the child was admitted to a rehabilitation center. In January 2017, after nearly nine months of inpatient treatment, the child was discharged and then placed with her maternal uncle and aunt. The child remained in this placement throughout these proceedings. Respondent, diagnosed with a traumatic brain injury, believed that she was in a coma for approximately four months. After she emerged from her coma, respondent was similarly admitted to a rehabilitation facility. From there, she resided in a group home until she transitioned to a semi-independent living center.

Approximately three months after the accident, petitioner, the Department of Health and Human Services ("DHHS"), filed a petition seeking termination of respondent's parental rights at the initial disposition. The petition alleged that respondent had an ongoing heroin addiction and that she was under the influence of heroin, opiates, and benzodiazepines at the time of the

accident.[1]  At a preliminary hearing on August 15, 2016, the trial court authorized the petition.[2]  A combined adjudication, statutory grounds, and best-interest hearing began in March 2018 and, after three days of hearings, concluded in August 2018.  Initially, the court found that it could exercise jurisdiction over the child.  It then found that statutory grounds for termination of respondent's parental rights had been established by clear and convincing evidence, and that termination of respondent's parental rights was in the child's best interests.  Thereafter, this appeal ensued.

## II. EFFECTIVE ASSISTANCE OF COUNSEL

Respondent contends that during the preliminary stages of this case, specifically, the preliminary hearing, she was denied the effective assistance of counsel.  This Court applies criminal law principles to claims of ineffective assistance of counsel in child protective proceedings.  *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016).  Because respondent did not move for a new trial or evidentiary hearing below, our review of this issue is limited to mistakes apparent on the record.  *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).  "To establish a claim of ineffective assistance of counsel, a [respondent] must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense.  In order to demonstrate that counsel's performance was deficient, the [respondent] must show that it fell below an objective standard of reasonableness under prevailing professional norms."  *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003), citing *Strickland v Washington,* 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); see also *People v Pickens,* 446 Mich 298, 302-303; 521 NW2d 797 (1994).  Establishing prejudice necessarily requires demonstrating a reasonable probability that the result of the proceedings would have been different but for counsel's error.  *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013).

---

[1] G. Davidson, the child's biological father, was also named as a respondent in the petition.  Regarding Davidson, the petition alleged a lack of suitable income and housing, and simply requested that the court take temporary custody of the child.  Davidson pleaded no contest to the allegations in the petition, and the court exercised jurisdiction over the child on the basis of her father's conduct.  In the two years that followed, Davidson participated in and substantially complied with a treatment plan.  He made sufficient progress that it appeared likely that the child could be placed in his care.  In approximately July 2018, however, Davidson suffered a severe and debilitating stroke and was apparently institutionalized.  Consequently, the goal with respect to Davidson changed from reunification to guardianship, and Davidson was thereafter dismissed from the petition.

[2] Although respondent believed that she was in a coma for four months following the May 9, 2016 accident, the caseworker testified at the preliminary hearing on August 15, 2016, that respondent was placed in a rehabilitation facility, and rehabilitation employees opined that respondent could not be placed on the telephone for the hearing because mentally she was "slow to process."

Respondent's claims of deficient representation begin with the premise that the trial court lacked personal jurisdiction because she was not properly served with the petition before the preliminary hearing. Respondent then indirectly addresses her jurisdictional challenge by simply arguing that her counsel was ineffective for failing to object to the lack of personal jurisdiction at the preliminary hearing.[3] Respondent apparently contends that had her counsel objected to a lack of service, the petition would not have been authorized and the outcome of the entire proceedings would have been different. For the reasons discussed below, we find no merit to respondent's arguments.

In child protective proceedings, the Legislature has required that a parent named in a termination petition receive personal service of a summons before the court may conduct a hearing. MCL 712A.12; *In re Dearmon*, 303 Mich App 684, 693; 847 NW2d 514 (2014). The court rules, again, emphasize the necessity of personal service: "In a child protective proceeding, a summons must be served on any respondent." MCR 3.902(B)(2)(b). Indeed, MCR 3.920(B)(4)(a) and (b) demand that service be made by "delivering the summons to the party personally," unless the petitioner proves that it "is impracticable or cannot be achieved." With respect to the preliminary hearing in particular, MCR 3.920(D)(2)(b) allows for notice of the hearing to be given either "in person, in writing, on the record, or by telephone." Moreover, MCR 3.965(B)(1) permits the preliminary hearing to be conducted in the absence of a parent who has been given notice. After reviewing the record, we conclude that respondent has failed to establish that service of process did not comply with the foregoing provisions.

The petition in this case was filed on August 12, 2016. Respondent was not present at the August 15, 2016 preliminary hearing that followed. However, she was represented by appointed counsel that day. A caseworker from Child Protective Services informed the court that she had given respondent notice of the hearing in person. The caseworker then explained that respondent was not at the hearing because she was in a rehabilitation facility and "she could not mentally even be on the phone because she is slow to process." When the court asked respondent's counsel if he was requesting an adjournment, counsel explained that he was not because, considering respondent's traumatic brain injury and continued rehabilitation efforts, "it could be several months" before respondent would be able to attend. Counsel also acknowledged receipt of the petition. Thereafter, respondent's counsel waived the reading of the petition and the

---

[3] It is clear that had respondent simply argued that the lower court lacked personal jurisdiction to terminate her parental rights, this argument would have failed. After the preliminary hearing, a guardian was appointed. The guardian was served with a copy of the petition in December 2016. The guardian and respondent were present at several hearings, including the combined adjudication, statutory grounds, and best-interest hearings held between March and August of 2018. Indeed, respondent appeared and testified during the combined hearing. Under these circumstances, respondent clearly waived any challenge to personal jurisdiction. "[T]he general rules governing waiver of objections regarding service of process should apply to termination proceedings where a parent or parents appear at the termination hearing, challenge the petition for termination, and fail to challenge or raise the issue of lack of service of process arising out of prior proceedings." *In re Gillespie*, 197 Mich App 440, 447; 496 NW2d 309 (1992).

presentation of probable cause testimony. At the conclusion of the hearing, the court authorized the filing of the petition after finding probable cause to believe that one or more of the allegations in the petition were true and fell within MCL 712A.2(b). The court then granted petitioner's request to have the child placed with DHHS.

On October 6, 2016, a guardian was appointed for respondent and letters of authority were issued. At a pretrial hearing on November 4, 2016, the court noted that there was no proof of service on respondent. When asked if respondent was capable of participating in the hearings, respondent's counsel replied that he did not know. He also informed the court that respondent had a guardian. In light of these events, the court adjourned the hearing "to get personal service on mother" and ensure that respondent's guardian was present and participating in the proceedings.

When the pretrial hearing resumed on December 15, 2016, respondent's guardian was present. The guardian indicated his belief that because respondent was incapacitated and had been appointed a guardian, prior service on respondent was not valid. However, the guardian informed the court that he had received a copy of the petition that afternoon. Respondent's attorney also indicated that he had spoken to respondent by phone, that she was able to communicate with him, and that during their telephone conversation, respondent indicated that she wanted a trial on jurisdiction.

Considering the foregoing record, respondent has failed to establish that she was denied the effective assistance of counsel. Under the circumstances that existed at the time of the preliminary hearing, it is not clear that service on respondent was improper. Respondent appears to argue that service was invalid because she was recovering from injuries attributable to the car accident. At the time respondent was served, however, she had yet to be declared legally incapacitated or incompetent. There was no legal guardian to accept service on respondent's behalf. Indeed, respondent has not provided any authority for the proposition that a party who has not been declared incapacitated is incapable of accepting service. Because the record does not support that service on respondent, when made, was legally insufficient, respondent has not established that counsel was ineffective for failing to object to service at the preliminary hearing.

Respondent also asserts that her counsel was ineffective for waiving probable cause and failing to request an adjournment of the preliminary hearing to allow for the appointment of a guardian at that time. However, she has failed to establish that counsel's conduct fell below an objective standard of reasonableness in this regard or that she was prejudiced by these decisions.

Respondent's counsel declined to request an adjournment because, given the extent of respondent's injuries, it would be at least several months before respondent could attend a hearing, let alone care for her child. Counsel clearly recognized that it would not be in anyone's best interests, particularly the child's, to unnecessarily delay the proceedings any further. Furthermore, it was reasonable for counsel to allow the hearing to go forward rather than delay the matter when the ultimate outcome of a preliminary hearing appeared to be inevitable. That is, it was readily apparent that the court would find probable cause and, thereafter, authorize the petition. The decision to waive probable cause appears to be one of trial strategy. Trial strategy is entitled to great deference, and this Court will not substitute its judgment for that of trial

counsel regarding matters of trial strategy. *People v Garza*, 246 Mich App 251, 255; 631 NW2d 764 (2001).

Finally, respondent has failed to establish that she was prejudiced by counsel's allegedly deficient performance. Specifically, respondent has not demonstrated that the result of the proceedings would have been different had counsel objected to service of process, requested an adjournment to permit the appointment of a guardian, and then later contested probable cause.

During the preliminary hearing, the court must decide, among other things, whether to authorize the petition. MCR 3.965(B)(12). A trial court may authorize the filing of a petition if there is probable cause to believe that one of more of the allegations in the petition are true and fall within MCL 712A.2(b). MCR 3.965(B)(12). The petition alleged, in part, that respondent, under the influence of heroin, opiates, and benzodiazepines, was involved in a single car accident while driving the child to school and that the child sustained severe injuries. The record at the preliminary hearing established that respondent was not able to care for her daughter and would not be able to within a reasonable time. Moreover, evidence presented during later hearings established that respondent had a long history of heroin abuse. Indeed, she candidly admitted to routinely using heroin virtually every night. TM testified that on the night before the car accident, respondent was under the influence of some substance that caused her to behave in a bizarre manner, and that early the following morning, respondent was involved in a one-car accident that caused serious injury to herself and the child. Considering the foregoing, even if counsel had performed in the manner suggested by respondent, there is no reasonable probability that the trial court would not have found probable cause to authorize the petition. Indeed, respondent does not even contest the existence of probable cause to authorize the petition. Consequently, respondent's claims that she was deprived of the effective assistance of counsel and prejudiced by allegedly deficient representation are without merit.

### III. AMERICANS WITH DISABILITIES ACT

Next, respondent argues that the trial court and petitioner failed to comply with the requirements of the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*. Her arguments in this regard appear to be two-fold. First, respondent seems to claim that reasonable efforts were not made to reunite the family. She then argues that, throughout the proceedings, the court and DHHS failed to accommodate her disabilities. Neither position is supported by the record.

In general, before a court may contemplate termination of a parent's parental rights, the DHHS must make reasonable efforts to reunite the family. MCL 712A.19a(2). The purpose of the treatment plan is to facilitate the return of the children to their parents. *In re Mason*, 486 Mich 142, 156; 782 NW2d 747 (2010). DHHS's statutory duties to update a parent's treatment plan and provide the parent with necessary and relevant reunification services continue throughout the case. *Id.* "The adequacy of the [DHHS]'s efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009).

In *In re Hicks/Brown*, 500 Mich 79; 893 NW2d 637 (2017), our Supreme Court considered whether the DHHS made reasonable efforts to reunify an intellectually disabled

parent with her children. The Court considered obligations that arise under both the ADA and the Michigan Probate Code, MCL 712A.18f(3)(d). Under the Probate Code, "the Department has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *Id.* at 85. Our Supreme Court also noted that the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* at 86 (citation omitted.) The Court then held that the DHHS neglects its duty under the ADA to reasonably accommodate a disability when it fails to implement reasonable modifications to services or programs offered to a disabled parent. *Id.* Similarly, the Court stated that "efforts at reunification cannot be reasonable under the Probate Code if the Department has failed to modify its standard procedures in ways that are reasonably necessary to accommodate a disability under the ADA." *Id.*

To the extent that respondent argues that reasonable efforts and accommodations were not made to reunify the family, this argument must fail because reasonable efforts toward reunification were not required in this case. Despite the oft-quoted proposition that reasonable efforts must be made to reunite a family, petitioner is not required to provide reunification services when termination of parental rights is the agency's goal. *In re Moss*, 301 Mich App 76, 91; 836 NW2d 182 (2013). In this case, petitioner sought termination of respondent's parental rights at the initial disposition, and the court subsequently found clear and convincing evidence to terminate parental rights under MCL 712A.19b(3)(b)(*i*), (g), and (j), and that termination would be in the child's best interests. Accordingly, petitioner was not required to provide reunification services in this case. *In re Moss*, 301 Mich App at 91-92; see also MCR 3.977(E). Because DHHS was not required to provide any services, respondent cannot prevail on a claim that DHHS failed to make reasonable accommodations for services it was not obligated to provide. The factual predicate necessary to lend validity to respondent's argument is absent.

Respondent also vaguely argues that the trial court and petitioner, in general, failed to accommodate her disabilities during the proceedings. Apparently in an effort to offer some specificity, respondent asserts that no requests for adjournments were made and no accommodations were offered when she underwent her psychological evaluation and when she testified at trial. Regarding adjournments, respondent's representations are simply inaccurate. The court adjourned several hearings to ensure that respondent was properly served, that her guardian was similarly served and present at the hearings, that parties received and had ample time to review voluminous medical records, and to enable respondent to participate in an updated psychological evaluation. As a result of these adjournments, more than 18 months elapsed between the filing of the petition and the start of the combined adjudication, statutory grounds, and best-interest hearing. Respondent was the unintended beneficiary of these adjournments in that she was given additional time to work on her recovery and become stronger and more self-sufficient. Respondent was also appointed a guardian to assist her, and she was offered a multitude of services and treatment in her rehabilitation facilities.

With regard to accommodations during the psychological evaluation and while she was testifying, respondent has failed to identify what actions should have been taken to accommodate her specific needs. Moreover, it is difficult to discern from the record what accommodations respondent may have required that she was not provided. Indeed, the court psychologist noted that during his evaluation, respondent was allowed time to formulate her responses to questions

asked. Her thoughts were logical and well-organized. Respondent exhibited no indication of intellectual limitations. The psychologist also found that respondent had no difficulty reading the questionnaires. Cognitive screening revealed no significant cognitive or memory impairment. The record does not support respondent's position that she was denied necessary accommodations so that she could meaningfully participate in the psychological evaluation or testify at the combined hearing. Accordingly, respondent has failed to demonstrate that there was a lack of compliance with the requirements of the ADA.

## IV. TERMINATION OF PARENTAL RIGHTS

Finally, respondent challenges the trial court's finding that termination of her parental rights was in the child's best interests. We find no merit to her argument. Once a statutory ground for termination has been established, the trial court must find that termination of parental rights is in the child's best interests before it can terminate parental rights. MCL 712A.19b(5); *In re Olive/Metts,* 297 Mich App 35, 40; 823 NW2d 144 (2012). Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *In re Moss,* 301 Mich App at 90. We review for clear error a trial court's finding that termination of parental rights is in a child's best interests. *In re Jones,* 286 Mich App 126, 129; 777 NW2d 728 (2009).

A trial court may consider several factors when deciding if termination of parental rights is in a child's best interests, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability and finality, and the advantages of a foster home over the parent's home. *In re Olive/Metts,* 297 Mich App at 41-42. The court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history. *In re Jones,* 286 Mich App at 131.

The trial court did not clearly err when it found that termination of respondent's parental rights was in the child's best interests. There existed overwhelming evidence that the child would be at risk of harm in respondent's care. At the time of the termination hearing, the child had been in care for two years, and respondent was still residing in an assisted living facility. While respondent was able to attend to many of her own activities of daily living, she continued to require supervision, including assistance with her medication regime. Respondent was unable to live independently. Because she was unable to care for herself, it was readily apparent that she could not provide for and attend to the needs of a child. Furthermore, the psychologist testified that there was no way to predict when respondent might be able to independently care for herself or her child.

There were also unresolved issues related to respondent's drug addiction. Respondent's substance abuse dated back to 2011. While in respondent's care, the child witnessed respondent inject heroin into her arm. The child was also present in 2014, when respondent was found on the floor after overdosing on heroin. The child then endured respondent's eight-week absence while she attended an inpatient drug treatment program. Only a few short weeks after her discharge, respondent relapsed and, thereafter, her drug use escalated. Respondent admitted that she used heroin virtually every single evening in the two years that preceded the 2016 accident. Before the accident, the child was so frequently exposed to respondent's drug use and inebriation that it had become normalized in the child's mind.

Moreover, the fact that the child was severely injured because of respondent's heroin addiction cannot be ignored. TM was concerned about respondent operating a vehicle while the child was in the car. She expressed these concerns to respondent, yet respondent was undeterred. Mere hours after being observed in an extremely altered state, respondent attempted to drive a vehicle with her daughter as a passenger. The ensuing one-car accident resulted in serious injury to the child. The child described her recovery as painful and while she is, for the most part, physically healed, she continues to suffer the emotional ramifications of the accident. The child experiences nightmares, and she has undergone a personality change. Before the accident, the child was a fairly adventurous and independent preteen. She now was more timid and inhibited by the fear that she might be injured again.

Although respondent had apparently been drug free since the accident, the fact that she has been supervised is relevant. Respondent has not demonstrated that she can live drug free outside of a controlled environment. Moreover, respondent's ability to continue a sober lifestyle after she is eventually discharged from her treatment is questionable. This is evident by the psychologist's observations that respondent remains defensive regarding her past drug use, and she continues to minimize the impact her drug abuse has had on her child and others.

At the time of the termination hearing, the court considered the fact that the child had been living with her maternal uncle and aunt for more than 18 months. The child testified that she was happy in this home, that she had made friends, and that she did not want to change schools. Although placement with a relative weighs against termination, and the fact that a child is living with relatives must be considered, a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests. *In re Olive/Metts*, 297 Mich App at 43. In this case, the trial court acknowledged the relative placement, but still found that termination of respondent's parental rights was in the child's best interests. It noted that this was the best avenue by which the child would be afforded the greatest opportunity to achieve closure, stability, and permanence. Considering this, the trial court did not clearly err when it determined that termination of respondent's parental rights was in the child's best interests despite the fact that she was in relative placement with her maternal uncle and aunt.

The evidence supported a finding that a strong bond existed between the child and respondent. The child testified that respondent was her best friend, and she missed respondent. However, the child also recognized that respondent was unable to care for her and that, because of this, she did not want to return to respondent's care. Indeed, the child testified that she wanted to live with either her uncle or her biological father. Although there existed a bond between respondent and her daughter, other factors clearly outweighed the import of that bond. *In re LE*, 278 Mich App 1, 29-30; 747 NW2d 883 (2008). As the trial court correctly found, the child required closure, permanence, and finality.

Respondent further contends that the trial court should have considered a guardianship with the maternal aunt and uncle in lieu of terminating her parental rights. The court did consider the possibility of a guardianship, but it found that a guardianship would not afford the child closure, and the permanency and finality she required. The court also found compelling respondent's substance abuse history, concluding that respondent's substance abuse issues would present a continuing risk to the child if the child were ever returned to respondent's care. A trial

court is not required to establish a guardianship if it is not in the child's best interests to do so. *In re Mason*, 486 Mich at 168-169. The trial court articulated valid concerns that warranted a finding that a guardianship would not be in the child's best interests.

Considering the foregoing evidence, the trial court did not clearly err when it found that a preponderance of the evidence demonstrated that termination of respondent's parental rights was in the child's best interests.

Affirmed.


/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel
/s/ James Robert Redford