*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* D. HAMBERG, Minor.

UNPUBLISHED
November 30, 2023

No. 365521
Gogebic Circuit Court
Family Division
LC No. 21-000035-NA

Before: BOONSTRA, P.J., and BORRELLO and FEENEY, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to her minor child, DH, under MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication continue to exist and there is no reasonable likelihood that they would be rectified within a reasonable time considering the child's age), (g) (the parent, although financially able to do so, fails to provide proper care and custody and there is no reasonable expectation that parent will be able to do so within a reasonable time considering the child's age), and (j) (risk of harm if returned to parent). The trial court further found, pursuant to MCL 712A.19b(5), that termination of respondent's parental rights was in DH's best interests.[1] On appeal, respondent contends that the trial court clearly erred by finding clear and convincing evidence to support the statutory grounds for termination and in finding, by a preponderance of the evidence, that termination of her parental rights was in DH's best interests. Finding no merit to respondent's arguments, we affirm.

## I. STATUTORY GROUNDS FOR TERMINATION

Regarding respondent's contention that the trial court clearly erred by finding clear and convincing evidence to support the statutory grounds for termination, MCL 712A.19b(3)(c)(*i*), (g), and (j) provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

---

[1] The father's parental rights to DH were also terminated but he is not a party to this appeal.

-1-

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met. *In re Moss*, 301 Mich App 76, 88; 836 NW2d 182 (2013). "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re Keillor*, 325 Mich App 80, 85; 923 NW2d 617 (2018), citing *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014); MCR 3.977(K). A finding of fact is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake was made. *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003). Further, deference is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appear before it. MCR 2.613(C); *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016).

Regarding MCL 712A.19b(3)(c)(*i*), respondent relies on *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009), for the proposition that termination of a respondent's parental rights is only proper under this statute, "if the totality of the evidence amply supports that the respondent has not accomplished any meaningful change in the conditions that led to the adjudication." Respondent contends that she had made meaningful change. She recently entered an inpatient program and after she left the program she did not have any positive tests for methamphetamine; her drug tests showed only Suboxone and THC, she was participating in substance abuse counseling and recovery sessions. Respondent contends that her negative drug screens clearly indicated a benefit from her services. Given the totality of the evidence in this case, the trial court found that respondent had not accomplished any meaningful change in the conditions that led to the adjudication and there was no reasonable likelihood that she would rectify those conditions within a reasonable amount of time considering the child's age. We agree.

The conditions that existed at the time of adjudication, as alleged in the initial petition, were that respondent had a chronic history of substance abuse and involvement with Children's Protective Services (CPS), had refused services and interventions in the past, DH had tested positive for opioids at birth, and respondent had refused to cooperate with the agency both before and after DH was removed from her care. The initial petition further alleged that because of respondent's history of chronic substance abuse, domestic violence, refusal to engage in services, and concerns about current drug use, DH was at a substantial risk of harm if left in respondent's care without services to address these concerns. DH was removed from the home at five weeks old and placed in the home of his paternal grandparents (foster parents) where he remained and thrived during the pendency of this case.

At the termination hearing, after 18 months of noncompliance with the requirements of her parent-agency treatment plan (PATP), respondent started counseling with her third counselor for only two weeks. The trial court found that respondent did not benefit from either of her two prior counselors because she had continued to test positive for methamphetamine even after impatient treatment. Although counseling was provided to address respondent's mental health issues, the trial court found that respondent had not obtained mental health services during this case with the exception of her testimony at the termination hearing that she had now been assessed and would be seeing a psychiatrist soon. The trial court stated that because respondent had not provided the agency or the court with a mental health assessment or proof of any services, it could only assume that the mental health concerns remained.

During her testimony at the termination hearing, respondent contended that she had been "clean of meth" since November 2022; however, Gayle McGahan, the foster care worker, testified that respondent had not testified truthfully because she produced the results of respondent's drug test taken on December 22, 2022, that came back positive for amphetamine, methamphetamine, THC, and Suboxone. Respondent only had a prescription for Suboxone. In addition, respondent admitted that she had used Suboxone without a prescription when she "was in pain." The record shows no issues in regard to respondent's parenting time during the 18 months DH was in care; however, she never progressed to unsupervised visits with DH and was inconsistent with visits. Additionally, respondent acknowledged that her failure to progress to unsupervised visitation was due to her positive drug screens. Further, she insisted that she was going to continue using marijuana even though the trial court had ordered her not to do so. Despite losing custody of her two older children because of neglect and drug use, and having DH taken from her because of drug use, respondent refused to take any parenting classes because she believed that she did not need them; "It's not my first rodeo . . ." It was also revealed at the termination hearing that respondent had recently missed six or seven parenting time visits. She claimed these missed visits were all due to illness, work, or her failure to timely confirm that she would attend the visit.

DH's father and respondent separated shortly after DH was removed from the home. During this case, respondent and the father had requested the trial court issue a no-contact order and the trial court agreed.[2] Shortly before the termination hearing, the trial court ended the no-

---

[2] At the termination hearing, the father testified regarding some incidents of domestic violence that had occurred in the home during respondent's pregnancy with DH and after his birth, including

contact order again at the request of respondent and the father. At the termination hearing, it was learned that respondent and the father had moved back in the home together. McGahan testified that she had not known about the severity of the domestic violence between respondent and the father or that they had reunited and were now living together, until the termination hearing. The fact that respondent was now reunited with the father was very concerning because the domestic violence issue had never been raised or addressed.

The record also showed that respondent blamed everyone but herself for her inability to stop using illegal substances and failure to progress, including her previous counselors, the inpatient treatment program and facility, and McGahan. Respondent accused the father of lying about the domestic violence and stated that the people who were providing the services "just aren't the right people." Additionally, respondent testified at several hearings that in-home services should have been provided to her before CPS removed DH from the home. This argument is disingenuous. The initial petition alleged that when CPS workers first approached respondent, she refused to cooperate with the agency. She denied any substance use, refused to take a random drug screen, and refused to speak with CPS workers. The initial petition also alleged that before filing the petition for removal, multiple attempts were made to speak with respondent, including home visits, phone calls, text messages, and social media, but CPS had not made contact or received any response. On the basis of respondent's history of refusing to engage in services with her two prior children who were no longer in her care, the trial court agreed that there was no program that could be put in place in the home to assure DH's safety. Respondent's refusal to follow court orders and her disregard for the consequences of noncompliance, even when faced with an order to show cause, supported the trial court's conclusion that additional programming was futile.

After blaming McGahan for not sending her to inpatient treatment, respondent found and entered an inpatient treatment center, but left after five days saying that she could not do it because the program was understaffed, there were too many people there, including babies, she could not concentrate, she was "not a people person," and she was "doing good." In its opinion, the trial court agreed that the services respondent had engaged in within the prior 60 days were "simply not enough for the court to rely upon as proved sobriety." The trial court also noted that respondent had tested positive for THC at the time of the termination hearing, and opined that while testing positive for THC was better than testing positive for methamphetamine, respondent was still not in compliance with the trial court's order to not use any substance unless it was prescribed, with documentation, including THC and alcohol.

Throughout the case, respondent did not maintain contact with McGahan as required by the PATP. Respondent had told McGahan to contact her by text messages, but respondent did not respond to most of the text messages that McGahan sent to her about drug screens and visitation.

---

that respondent assaulted him with a knife, respondent attempted to run over him with his car, he hid in a bathroom out of fear of physical harm from respondent, and he used DH as a ploy to get away from an argument with respondent without physical harm to himself. The paternal grandmother reluctantly testified that the father had told her about all these incidents, and that she had seen a knife cut wound on his arm after the knife assault.

McGahan could see on her phone that the messages had been read. Respondent told McGahan several times that she deliberately missed drug screens because she knew that she was going to test positive for methamphetamine and other drugs.

The trial court stated in its opinion that DH could not be asked to wait any longer for permanency. It was not reasonable to expect the case to remain open with DH in foster care for the time it would take for respondent to demonstrate that she was actually making progress on her sobriety. The trial court found that the conditions that led to the adjudication still existed. Respondent had a long history of substance use that continued throughout the duration of this case, and of avoiding taking the steps to sobriety. The court stated that, "one or two months" of claimed sobriety, without any documentation, was not enough to show sufficient improvement.

Based upon a review of the record, there was clear and convincing evidence that the conditions that led to the adjudication continued to exist and there was no reasonable likelihood that they would be rectified within a reasonable time considering DH's age and the fact that he had been in foster care for more than a year and a half. The trial court did not clearly err in finding clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*). Given our conclusion that termination pursuant to MCL 712A.19b(3)(c)(i) was proven by clear and convincing evidence, it is "unnecessary to address the second ground for termination alleged in the petition because the petitioner need only establish one ground for termination . . . ." *In re Trejo*, 462 Mich 341, 360; 612 NW2d 407 (2000).


II. BEST INTERESTS

Next, respondent contends that the trial court clearly erred by finding that termination of her parental rights was in DH's best interests. We disagree.

"Best interests are determined on the basis of the preponderance of the evidence." *In re LaFrance,* 306 Mich App 713, 732-733; 858 NW2d 143 (2014). This Court reviews a trial court's decision regarding a child's best interests for clear error. *In re White*, 303 Mich App at 713. "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App 261,264; 817 NW2d 115(2011). In Moss, 301 Mich App at 89, this Court held:

> [O]nce a statutory ground for termination is established, i.e., the parent has been found unfit, the focus shifts to the child and the issue is whether parental rights *should* be terminated, not whether they can be terminated. Accordingly, at the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has. [*Id*.]

MCL 712A.19b(5) provides:

> If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made.

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. In deciding whether termination is in the child's best interests, the court may consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home," *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted), the child's safety and well-being, *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011), whether the parent can provide a permanent, safe, and stable home, *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012), and the child's "need for permanency, stability, and finality," *In re Gillespie*, 197 Mich App 440, 446-447; 496 NW2d 309 (1992). Other considerations include the length of time the child has been in foster care or placed with relatives, the likelihood that "the child could be returned to her parent's home within the foreseeable future, if at all[,]" and compliance with the case service plan. *Frey*, 297 Mich App at 248-249. In addition, the court may also consider a parent's history of domestic violence, the parent's visitation history with the child, the child's well-being while in care, and the possibility of adoption. *In re Pederson¸* 331 Mich App 445, 476; 951 NW2d 704 (2020).

In making its best-interest determination, the trial court first found that, at visits, DH recognized and was happy to see respondent and he showed affection to her. Nevertheless, respondent had demonstrated that she was not able to provide a safe and stable home for him in the long term. The trial court found that DH was in a happy and safe home, which had been his home for the vast majority of his life, and that he had a strong bond with his foster parents, who were his paternal grandparents. The foster parents wanted to adopt DH and the trial court found that the foster parents would make safe choices on DH's behalf and would consider safety concerns in determining whether either respondent or the father should have contact, and what kind of contact, with DH in the future.[3]

Although there were no issues with respondent's conduct during visitations and there was a bond between respondent and DH, those positive factors were not sufficient for reunification. The determinative factors favoring the conclusion that termination of respondent's parental rights was in DH's best interests were that DH needed permanency, stability, and finality. *Olive/Metts*, 297 Mich App at 41-42, *Frey*, 297 Mich App at 248-249. The evidence clearly demonstrated from respondent's past involvement with CPS and during the pendency of this case that respondent would never seriously address her drug addiction, even when it meant losing custody or the parental rights to her children. She would not be able to provide permanency, stability, and finality or a safe, and stable home for DH within a reasonable time considering DH's age. DH had been in foster care for 18 of the 19 months of his life, a period of time that made it unreasonable to continue to offer respondent the opportunity for reunification given that she had not complied with the most important requirements of the PATP. DH also had a very strong bond with his caregivers. Respondent had a sporadic visitation history, a history of domestic violence that she denied and had not been addressed, and the foster parents wanted to adopt DH. *Pederson*, 331 Mich App at

---

[3] The trial court considered the fact that DH was placed with family members, which is a factor weighing against termination, but the court found that the foster parents' desire to provide permanence for DH as well as their ability to put DH's needs first supported termination being in DH's best interest.

476. All these factors weigh toward termination. DH's "interest in a normal family home is superior to any interest the parent has." *Moss*, 301 Mich App at 89. Therefore, we find that the trial court did not clearly err by finding, by a preponderance of the evidence, that termination of respondent's parental rights was in DH's best interests.

Affirmed.

/s/ Mark T. Boonstra
/s/ Stephen L. Borrello
/s/ Kathleen A. Feeney