*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. CARR-ROBINSON, Minor.

UNPUBLISHED
July 14, 2025
11:26 AM

No. 372688
Wayne Circuit Court
Family Division
LC No. 21-000961-NA

Before: GADOLA, C.J., and RICK and YATES, JJ.

PER CURIAM.

Respondent-father appeals of right the trial court's order terminating his parental rights to his minor child, ACR. We affirm.

## I. FACTUAL BACKGROUND

When ACR was born in April 2021, she tested positive for methadone and opiates, and she displayed symptoms of withdrawal. The Department of Health and Human Services (the DHHS) initiated proceedings against respondent-mother for ACR's removal,[1] while ACR remained in the custody of respondent-father, who was a non-respondent at that time. But by September 2021, the caseworker assigned to the case reported difficulty maintaining communication with respondent-father. In November 2021, respondent-father lost his housing, and he placed ACR with fictive kin to avoid placement of ACR in the foster-care system. Meanwhile, respondent-father resided in a shelter or with other relatives. A safety plan for ACR's placement with fictive kin was in place by May 2022, and the DHHS's contact with respondent-father remained sporadic.

By July 2022, respondent-father had stopped visiting ACR, but he had secured a job and was trying to find suitable housing. The DHHS did not know of respondent-father's whereabouts and had no contact with him between July and October 2022. In November 2022, the DHHS filed

---

[1] Respondent-mother's parental rights were ultimately terminated, but that matter is not currently before this Court.

a petition to terminate respondent-father's parental rights pursuant to MCL 712A.19b(3)(a)(*ii*) (the parent has deserted the child for at least 91 days without seeking custody), MCL 712A.19b(3)(g) (the parent has not provided proper care or custody for the child despite being financially able to do so), MCL 712A.19b(3)(j) (likelihood of harm if the child is returned to the parent), and MCL 712A.19b(3)(k)(*i*) (the parent abused the child through abandonment).

By May 2024, respondent-father had maintained housing for nearly a year, but he admitted that it remained unsuitable for ACR and his water bill was in arears. His job consisted of under-the-table work providing him $100 each week. Respondent-father admitted he had not seen ACR between April 2023 and May 2024, and it was difficult for him to take three buses from where he lived in Detroit to the suburb where ACR was placed with fictive kin. Respondent-father conceded it was in ACR's best interests to remain with fictive kin because his employment was not secure.

At a hearing on May 9, 2024, the trial court concluded that there was clear and convincing evidence that statutory grounds existed to terminate respondent-father's parental rights under MCL 712A.19b(3)(a)(*ii*) (the parent has deserted the child for at least 91 days without seeking custody), MCL 712A.19b(3)(g) (the parent has not provided proper care or custody for the child despite being financially able to do so), MCL 712A.19b(3)(j) (likelihood of harm if the child is returned to the parent), and MCL 712A.19b(3)(k)(*i*) (the parent abused the child through abandonment).

At a best-interest hearing on August 2, 2024, the evidence established ACR was bonded to fictive kin, ACR's needs were being met, and fictive kin could provide long-term permanence and stability. In addition, fictive kin was pursuing adoption of ACR. Between May and August 2024, respondent-father was offered weekly visits with ACR, but he only visited ACR once, and it was disputed whether respondent-father maintained regular contact with fictive kin to check on ACR. The DHHS recommended against pursuing a guardianship for ACR, rather than adoption of ACR. Respondent-father admitted he had no plan to have ACR in his home on a full-time basis. During closing arguments, respondent-father contended, for the first time, that ACR should be placed in a guardianship with fictive kin instead of terminating respondent-father's parental rights. The trial court found that a preponderance of the evidence established that it was in ACR's best interests to terminate respondent-father's parental rights. The trial court found that fictive kin was providing for ACR, that respondent-father had not furnished permanence or stability, and that there was no real bond between respondent-father and ACR. The trial court also found that it would be harmful to keep ACR in "limbo" through placement in a guardianship instead of adoption. On August 5, 2024, the trial court entered an order terminating respondent-father's parental rights. Respondent-father now appeals of right.

## II. LEGAL ANALYSIS

On appeal, respondent-father asserts that the trial court erred by concluding that adoption, rather than a guardianship pursuant to MCL 712A.19a(8) & (9), was in the best interests of ACR. Respondent-father also presents a general challenge to the trial court's best-interest analysis.[2] This Court employs the clear-error standard when reviewing a trial court's determination that petitioner

---

[2] Respondent-father does not raise any challenges to the statutory bases for terminating his parental rights. Nonetheless, we have reviewed the record and find no errors that warrant reversal.

has proved, by a preponderance of the evidence, that termination of parental rights is in the child's best interests. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013); *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A circuit court's decision to terminate parental rights is clearly erroneous if, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003).

Once a statutory ground for termination has been proven by clear and convincing evidence, the trial court also "must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App at 40. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The trial court has to focus on the best interests of the child, not the parent. *In re Moss*, 301 Mich App at 87. However, "that custody with natural parents serves a child's best interests remains a presumption of the strongest order and it must be seriously considered and heavily weighted in favor of the parent." *In re LaFrance Minors*, 306 Mich App 713, 724; 858 NW2d 143 (2014) (quotation marks and citations omitted). Factors that the trial court may consider include: the child's bond to the parent, *In re Olive/Metts*, 297 Mich App at 41-44; the parent's parenting abilities, *In re Jones*, 286 Mich App 126, 129-130; 777 NW2d 728 (2009); and the needs of the child for permanency, stability, and finality. *In re Gillespie*, 197 Mich App 440, 446-447; 496 NW2d 309 (1992). The trial court may also consider the following: the parent's history and psychological evaluation, and the age of the child, *In re Jones*, 286 Mich App at 131; a parent's substance-abuse history, *In re Rippy*, 330 Mich App 350, 361; 948 NW2d 131 (2019); whether the parent can provide a permanent, safe, and stable home, *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012); and "the parent's compliance with his or her case service plan, the parent's visitation history with the child, the [child's] well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks and citations omitted). "Brief, definite, and pertinent findings and conclusions on contested matters are sufficient." MCR 3.977(I)(1).

Respondent-father insists that he was making "substantial progress towards reunification" and, instead of terminating his parental rights, a guardianship pursuant to MCL 712A.19a(8) & (9) was appropriate. As this Court has noted:

> for a court to consider a guardianship *before* termination, one of two conditions must be met: either the DHHS must demonstrate "under [MCL 712A.19a(8)] that initiating the termination of parental rights to the child is clearly not in the child's best interests" or the court must "not order the agency to initiate termination" proceedings under MCL 712A.19a(8). MCL 712A.19a(9). See also *In re COH*, 495 Mich 184, 197; 848 NW2d 107 (2014). Even then, a court can order a guardianship only if it "determines that [doing so] is in the child's best interests[.]" MCL 712A.19a(9)(c). [*In re Rippy*, 330 Mich App at 359-360 (emphasis added).]

Respondent-father's argument is misplaced for several reasons. First, the proceedings to terminate respondent-father's parental rights had already been initiated by the time respondent-father started asserting that a guardianship was more appropriate than adoption. Additionally, the agency and case service plans cautioned against a guardianship, and instead advocated for adoption as the goal,

counter to MCL 712A.19a(8). It does not appear from the record that respondent-father advocated for a guardianship prior to his best-interest hearing. Further, a guardianship contemplated by MCL 712A.19a(8) is permissive, not obligatory, as a "compelling reason" for a trial court to refrain from "order[ing] the agency to initiate proceedings to terminate parental rights." MCL 712A.19a(8). Finally, the trial court found that a guardianship was not in ACR's best interests and that, instead, termination of respondent-father's parental rights and adoption were in ACR's best interests.

Beyond the guardianship argument, respondent-father only makes a generalized challenge to the trial court's best-interest analysis. As the trial court noted, respondent-father had not found adequate employment, and he acknowledged that he had no plan to make his residence suitable for ACR. Respondent-father further admitted that it was in ACR's best interests to remain with fictive kin. Respondent-father was largely absent from ACR's life, admitting that he had not visited ACR for over a year at one point. ACR was bonded with fictive kin, and ACR's needs were being met. A review of the record reveals that the trial court did not err by finding that a preponderance of the evidence reflected that terminating respondent-father's parental rights was in ACR's best interests.

Affirmed.

/s/ Michael F. Gadola
/s/ Michelle M. Rick
/s/ Christopher P. Yates

-4-